### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION


**MARY R. DALE**                                                    **PLAINTIFF**


**v.**                                     **CIVIL ACTION NO. 2:11-CV-00150-KS-MTP**


**MICHAEL J. ASTRUE,**                                              **DEFENDANT**
**Commissioner of Social Security**


## DIRECTED OPINION

Plaintiff seeks judicial review of the Commissioner's decision denying her application

for SSI. For the reasons stated below, the Court AFFIRMs the Commissioner's decision.

## PROCEDURAL HISTORY

Plaintiff applied for SSI on March 14, 2007, but her application was denied. (Tr. 70, 13.)

On March 1, 2010, Plaintiff appeared pro se before the Administrative Law Judge ("ALJ") who

ruled that Plaintiff was not disabled in a decision dated June 14, 2010. (Tr. 10-27.) The Appeals

Council denied Plaintiff's request for review on June 1, 2011, and Plaintiff filed the present

Complaint on July 26, 2011. (Tr. 1.)

## FACTUAL/MEDICAL HISTORY

Plaintiff was born on Oct. 27, 1962; she was forty seven years old at the time of

application. (Tr. 91).  The Plaintiff is illiterate and suffers from diabetes, obesity, asthma,

☐

bronchitis, poor eyesight, arthritis in her legs and back, coronary artery disease, degenerative joint disease, and affective disorder. (Tr. 25 and 15, 115, 127, 131, 135).

> When the Plaintiff appeared before the ALJ, he began the hearing by stating:
>
> you are here today without an attorney or other representative. That is okay. The law doesn't require that you have one. But the law allows you to have one if you want one. Some people have one, some people don't. Either way is okay. But I do want to make sure, number one, that you understand you've got the right to have one if you want one. And, number two, that I can reschedule your hearing to another day if you want to have the opportunity to speak to someone about representing you.

(Tr. 53.) The ALJ then asked the Plaintiff if she understood her right to representation and knew of this right prior to the hearing. (Tr. 53-54.) The Plaintiff answered affirmatively and stated that she wanted to continue pro se, adding that she had previously retained counsel who had since "dropped out." *Id.* The ALJ again asked her if she wanted to continue without representation, and she affirmed she did. *Id.* Although the ALJ represented that he would conduct the hearing in a manner that would not disadvantage the Plaintiff for not having representation, he did not disclose (1) the manner in which an attorney could aid her, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation of attorney fees to twenty-five percent of past due benefits and the required court approval of the fees. (Tr. 53-54.)

During the hearing Plaintiff stated that she was illiterate and needed assistance with her finances, but that she had a driver's license. (Tr. 59) She testified that she had difficulty with her hands, back and legs. (Tr. 60.) She also testified that she had diabetes, which made work difficult because she has to regularly check her blood sugar levels and had been not permitted to eat snacks at her previous job. *Id.* Plaintiff suffered a heart attack three or four weeks before the hearing, and she had constant pain in her hands, legs, and back as a result of her diabetes. (Tr.

61-62.) Plaintiff also testified that she had asthma and bronchitis, which required her to avoid

smoke and chemicals, and caused shortness of breath when walking from one room to another

within her home. (Tr. 63.)

According to Plaintiff's medical records, she received mental health treatment at Weems

Mental Health Center for depressive disorder for less than a year in 2002-2003 and resumed

treatment in 2004. (Tr. 193-221, 272-98.) Her February 2005 treatment notes indicate progress

and possibly lowering her medications. (Tr. 294.) By January 2006, Plaintiff reported feeling

better, but her treatment was terminated in February 2006 for lack of insurance coverage for

home visits. (Tr. 277, 275.) Plaintiff could have continued treatment at the facility, but she chose

not to. (Tr. 275.)

According to the records of Razee Ahmad, M.D., Plaintiff's primary care physician, the

Plaintiff complained of back, knee, and hip pain. (Tr. 399, 401, 403-04, 406, 409-10, 424, 425.)

Dr. Ahmad's 2004 notes indicate mild to moderate lower cervical spondylosis, minimal

acromiclavicicular degenerative hypertrophy in her right shoulder, and lower lumber

degenerative disc and facet disease. (Tr. 445.) He proscribed numerous medications, including

narcotic pain medication and anti-depressants. (Tr. 154.)

On February 24, 2010, Dr. Ahmad diagnosed Plaintiff as disabled. Two months before,

however, he had represented to Plaintiff's car insurance company that she had no physical or

emotional issues impacting her ability to drive. (Tr. 464.) He also stated that Plaintiff's

medications did not impair her ability to drive. *Id.*

On May 1, 2007, Dr. Gary Gordon examined Plaintiff. (Tr. 306.) Dr. Gordon determined

that the Plaintiff suffered from diabetes, a history of recurrent bronchitis, gastroesophageal reflux

disease (GERD), constipation, chronic back pain, bilateral plantar fasciitis, poly arthralgia and

poly myalgia, anxiety, depression, insomnia, history of panic, and obesity. (Tr. 307). However, Dr. Gordon's diagnoses stemmed mostly from analysis of Plaintiff's medical history, rather than "objective findings." (Tr. 16.)

Dr. Thomas Elliot also examined the Plaintiff on December 1, 2007. (Tr. 319.) Dr. Elliot concluded that Plaintiff's mental capacity was in the mild to borderline mental retardation range. (Tr. 324-25.) He also found that she suffered from depression, post-traumatic stress disorder (PTSD), panic disorder, restriction of territory, and borderline traits. (Tr. 325.) Lastly, Dr. Elliot opined that the Plaintiff is "not . . . able to perform routine, repetitive talks nor to talk meaningfully with coworkers and a supervisor." *Id.* However, the ALJ gave Dr. Elliot's opinion little weight because it was not supported by "the preponderance of the record evidence." (Tr. 18.)

Dr. Jan Boggs examined Plaintiff on April 6, 2010, after the ALJ hearing. (Tr. 374.) Plaintiff cooperated with the exam but refused to attempt the intelligence-testing portion. Based on her own observations, Dr. Boggs concluded that Plaintiff had good ability to follow work rules; fair ability to relate to coworkers, deal with the public, and use judgment; and poor ability to interact with supervisors, deal with work stresses, and function independently. (Tr. 379.) Dr. Boggs also noted that Plaintiff was "depressed with some sedation and slowing." (Tr. 380.) The ALJ gave Dr. Boggs's report significant weight, finding that it was consistent and supported by the record evidence. (Tr. 19.)

The ALJ found that Plaintiff, despite suffering numerous ailments, was capable of light work and had the ability to:

> lift/carry and push/pull ten pounds frequently and twenty pounds occasionally. She can walk/stand for six hours in an eight-hour work day and she can also sit for two hours in an eight-hour work day. The claimant must avoid exposure to high concentrations of dusts, fumes, cigarette smoke, or gases. She is limited to

simple job instructions and only occasional causal interaction with co-workers and the general public.

(Tr. 22.) Accordingly, after considering the entire record and the testimony of a vocational expert (VE), the ALJ found that Plaintiff was not disabled. (Tr. 157) The VE stated that the Plaintiff could work as a bench assembler, laundry folder, or silver wrapper. (Tr. 157). Therefore, she was not disabled, as defined by the Social Security Act. (Tr. 26).

## BURDEN OF PROOF

An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). Once the claimant satisfies her initial burden, the Commissioner must establish that the claimant is capable of performing substantial gainful activity, utilizing the five-step procedure in 20 C.F.R. § 404.1520(b)-(f) (1988):

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f) (1988) (footnotes omitted); *Harrell,* 862 F.2d at 475. A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell*, 862 F.2d at 475.

## THE ADMINISTRATIVE LAW JUDGE'S ANALYSIS IN THIS CASE

Plaintiff's initial hearing before the ALJ was on March 14, 2007. (Tr. 13.)   The ALJ

decided that Plaintiff was not disabled on May 17, 2007 and again upon reconsideration on

February 11, 2008. *Id.* Plaintiff then requested a hearing, which was held on March 1, 2010, and

the ALJ rendered his final decision on June 14, 2010. (Tr. 27.)

At step one of the evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since her application date of March 14, 2007.[1] (Tr. 15.) At step two,

he found that Plaintiff suffered from the following severe impairments: obesity, diabetes

mellitus, asthma, coronary artery disease, degenerative joint disease of the left knee, and

affective disorder.  *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that meets or equals one of the listed impairments in 2

C.F.R. § 404, subpart P, Appendix 1. (Tr. 19.) The ALJ also assessed Plaintiff's Residual

Functional Capacity ("RFC"),[2] finding that she was able to:

> lift/carry and push/pull ten pounds frequently and twenty pounds occasionally. She can
> walk/stand for six hours in an eight-hour work day and she can also sit for two hours in
> an eight-hour work day. The claimant must avoid exposure to high concentrations of
> dusts, fumes, cigarette smoke, or gases.  She is limited to simple job instructions and only
> occasional causal interaction with co-workers and the general public.

(Tr. 22.) In making this determination, the ALJ considered Plaintiff's symptoms, the extent to

which they can be reasonably accepted as consistent with the evidence,[3] and the medical

opinions.[4] *Id.*

---

[1] The ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 404.1520(a) and
§ 416.920(a). (Tr. 14-15.)
[2] "Residual functional capacity" is most an individual can do despite the physical and/or mental
limitations affecting what she can do in a work setting. 20 C.F.R. § 416.945.
[3] *See* 20 C.F.R. § 404.1529 and § 416.929 and SSRs 96-4p, 96-7p.
[4] *See* 20 C.F.R. § 404.1527 and § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 96-3p

At step four, the ALJ found that Plaintiff had no past relevant work, and at step five, he concluded that Plaintiff could perform a significant number of jobs in the national economy. (Tr. 25.) The ALJ based this conclusion on Plaintiff's age, educational background, work experience, RFC, and the testimony from the VE. (Tr. 25-26.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. 26.)

## STANDARD OF REVIEW

When reviewing the Commissioner's decision, the court determines whether his findings are supported by substantial evidence and whether he applied the correct legal standards. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). It "must do more than create a suspicion of the existence of the fact to be established." *Hames,* 707 F.2d at 164 (citations omitted). However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).

Conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

**ISSUES**

Plaintiff raises three issues: (1) whether the ALJ violated her statutory right to counsel, (2) whether he failed to fully develop the record, [5] and (3) whether he failed to include all of the limitations from the opinion in his RFC.

**I.  Whether the ALJ violated the Plaintiff's statutory right to counsel.**

Plaintiff first claims that the ALJ violated her statutory right to counsel. [6] A plaintiff has a statutory right to counsel at SSI hearings. 42 U.S.C. § 406 (2011). An ALJ's decision is subject to reversal if a claimant is denied counsel and suffers prejudice as a result. *See Gullett v. Chater*, 973 F. Supp. 614 (E.D. Tex. 1997). In the present case, the ALJ provided Plaintiff with insufficient notice of the right to counsel, but Plaintiff suffered no prejudice as a result.

A claimant has a statutory right to counsel at a Social Security hearing. *Norden v. Barnhart*, 77 Fed. Appx. 221, 223 (5th Cir. 2003). Claimants are also entitled to adequate notice of their right to counsel. *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981)). "[N]otice should generally be provided in writing prior to a hearing" and "[t]he ALJ should then provide oral notification at the hearing to ensure that a claimant who appears pro se . . . has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." *Gullett v. Chater*, 973 F. Supp. 614, 621 (E.D. Tex. 1997) (citation omitted); *see also Norden,* 77 Fed. Appx. at 223. The ALJ should also inquire as to whether the claimant had a meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity. *Id.*

---

[5] Plaintiff's Complaint combined the right to counsel claim with the claim that the ALJ failed to fully and fairly develop the record. For purposes of clarity and to ensure both issues are properly addressed, they are treated as separate issues here.

[6] Claimant's right to counsel is statutory and not constitutional. *Riecke v. Barnhart*, 184 Fed. Appx. 454, 456 (5th Cir. 2006).

The statutory right to counsel may be waived if the claimant possesses adequate information to enable her "to decide intelligently whether to retain counsel or proceed pro se." *Norden*, 77 Fed. Appx. at 223. However, "[i]f inadequate notice was provided concerning the scope of the claimant's right, [the] waiver will be deemed invalid." *Gullett v. Chater*, 973 F. Supp. 614, 620 (E.D. Tex. 1997). Therefore, the ALJ must notify claimants of (1) "the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation of attorney fees to twenty-five percent of past due benefits and the required court approval of the fees." *Id.* (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981); *See Norden,* 77 Fed. Appx. at 223).

However, an invalid waiver of the right to counsel, by itself, will not merit reversal of an ALJ's decision. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) A claimant must also produce evidence that "would have been adduced . . . that could have changed" the ALJ's decision if the claimant had been represented by counsel. *Johnson v. Astrue*, 326 Fed. Appx. 737, 740. (5th Cir. 2009) (stating if Johnson had counsel and counsel had called witnesses to corroborate the severity of his symptoms, this could have changed the ALJ's decision); *see also Castillo*, 325 F.3d at 552.

Plaintiff received written notice of her right to counsel, but she argues that was inadequate because she is illiterate and the ALJ failed to verbally inform her at the hearing that (1) an attorney could have assisted her with her claim, (2) that there were possible sources of free counsel or contingency arrangements, and (3) that there existed a limitation of twenty-five percent attorney fees on past due benefits. Plaintiff claims that because she was not provided this information she did not make a knowing and intelligent decision to proceed pro se.

Plaintiff did not receive oral notification of these three factors. (Tr. 53-54.) Oral

notification is required for an individual to knowingly and intelligently waive the right to

counsel. *Gullett*, *973* F. Supp. at 620; *Norden,* 77 Fed. Appx. at 223. Therefore, Plaintiff's

waiver of counsel is invalid. However, Plaintiff must also produce evidence that would have

been adduced and could have changed the result if she had been represented by counsel. *Castillo*

325 F.3d at 552; *Johnson*, 326 Fed. Appx. at 740.

Plaintiff asserts that her lack of counsel resulted in three forms of prejudice. First, she

argues that counsel could have ensured the court's consideration of Dr. Thomas Elliot's

impression that she showed evidence of PTSD, panic disorder, anxiety, and depression. Second,

she argues that counsel would have elicited information about the side effects of her prescription

medications. Finally, Plaintiff argues that counsel would have ensured the inclusion of

limitations posed by Dr. Jan Boggs in the hypothetical presented to the VE. In summary,

Plaintiff offers no new evidence. Rather, she offers arguments to why the ALJ was wrong.

None of these arguments, though, could have changed the ALJ's decision. Plaintiff offers

no new evidence or testimony. The ALJ considered Dr. Elliot's impressions but gave his report

little weight because it was not supported by the weight of the evidence. (Tr. 18). Furthermore,

while Plaintiff argues that the AJL failed to consider side effects of her medications, the record

indicates that she reported no side effects. (Tr. 25, 120, 130.) Additionally, the ALJ specifically

mentions in his opinion the observed sedation and slowing noted in Dr. Boggs's report.

Finally, the Plaintiff contends that she was prejudiced because the hypothetical presented

to the VE excluded limitations found in Dr. Boggs's report. The excluded limitations were poor

ability to interact with supervisors, deal with work stresses, and function independently. (Tr.

379.) These limitations, while not enumerated, were reasonably accounted for by limiting the hypothetical individual to simple job instructions, and occasional casual interactions with coworkers and the general public. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (holding the hypothetical must reasonably incorporate all limitations recognized by the ALJ, and that a claimant or their representative have an opportunity to correct any defect in the hypothetical); *cf. Sims v. Apfel*, 224 F.3d 380, 381 (5th Cir. 2000) (finding borderline intellectual capacity and somatoform disorder accounted for by limitations of light work, mild to moderate difficulty concentrating and  paying attention due to pain, and moderate difficulty functioning due to depression); *Vanlandingham v. Astrue*, 2010 U.S. Dist. LEXIS 50997 *21 (N.D. Miss. Apr. 6, 2010) (implying claimant's intermittent tremors were reasonably accounted for by limiting to jobs that did not demand attention to detailed or complicated tasks or instructions; only perform jobs that did not require close cooperation and interaction with co-workers or the general public; and maintain attention and concentration for only two-hours at a time and adapt to changes in the work place on a basic level); *see also Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (holding that hypothetical question was not too abstract to reflect claimant's disabilities). Additionally, the Plaintiff submitted no evidence that the VE's response would have differed had the hypothetical explicitly reflected these limitations.

In summary, Plaintiff's arguments are based upon mere conjecture, and Plaintiff has not demonstrated that any of these factors could have altered the ALJ's decision. Plaintiff must provide more than speculation to demonstrate prejudice. *Osborne v. Astrue*, 2012 U.S. Dist. LEXIS 25645, *21-22 (W.D. La. Jan. 26, 2012) (holding something more than an attorney's claim his cross-examination of a doctor would have produced more specific evidence is required); *Lloyd v. Astrue*, 2011 U.S. Dist. LEXIS 151640 (W.D. La. Dec. 7, 2011) (holding

mere speculation that additional evidence might have changed the result does not suffice); *See also Hyde v. Astrue*, 2008 U.S. App. LEXIS 10228 *11 (5th Cir. May 12, 2008) (holding that more than a speculative assertion is necessary to show prejudice from an ALJ's failure to fully develop the record). Therefore, the ALJ's failure to provide Plaintiff with sufficient notice of her right to counsel does not merit reversal of his decision.

    II.   **Whether the ALJ failed to fully develop the record.**

Plaintiff's second argument is that the ALJ failed to fully and fairly develop the facts. The ALJ has a duty to fully and fairly develop the relevant facts. 42 U.S.C. § 405(g); *Norden v. Barnhart*, 77 Fed. Appx. 221, 223 (5th Cir. 2003). When a claimant appears pro se, the ALJ, has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984); *Winston ex. rel. D.F. v. Astrue*, 341 Fed. Appx. 995, 997 (5th Cir. 2009). However, the claimant must show that the facts were not fully and fairly developed, and that had the record been developed, the ALJ would have "adduced evidence that might have altered the result." *Winston ex. rel. D.F.*, 341 Fed. Appx. at 997; *Byrd v. Comm'r of Soc. Sec.*, 368 Fed. Appx. 542, 543 (5th Cir. 2010); *Kane*, 731 F.2d at 1220. To show such prejudice, a Plaintiff must present more than mere speculation. *Hyde v. Astrue*, 2008 U.S. App. LEXIS 10228 *11 (5th Cir. May 12, 2008).

Plaintiff argues that the ALJ failed to fully and fairly develop facts regarding her mental impairments. Specifically, the ALJ did not ask Plaintiff about PTSD, panic disorder with agoraphobic tendency, anxiety, and depression. Plaintiff asserts that had the ALJ asked about these issues, *perhaps* a second mental status evaluation would not have been required. She also argues that had the ALJ more thoroughly explained the second evaluation, she would have put forth more effort and *perhaps* produced a more conclusive result. These arguments contain no

facts or evidence that would have been adduced and could have altered the result of the proceeding. Indeed, Plaintiff's argument that *perhaps* a more thorough questioning could have elicited more information is mere speculation.

Next, Plaintiff argues that the ALJ failed to fully and fairly develop facts regarding the side effects of her medications. However, the ALJ specifically acknowledged the sedation and slowing mentioned by Dr. Boggs. Plaintiff has not offered any evidence that the ALJ failed to consider these factors. Regardless, her argument that it would have altered the decision is nothing but speculation.

Plaintiff also argues that the ALJ erred by not re-contacting the Plaintiff's physician, Dr. Ahmad, to allow him to clarify his basis for finding that the Plaintiff is disabled. However, the ALJ concluded that Dr. Ahmad's opinion was contradictory to his own treatment notes and not supported by the evidence. (Tr. 15-16, 464, 465.) In fact, just two months prior to Dr. Ahmad's assertion that the Plaintiff was disabled, he told her car insurance company that she had no physical or emotional issues or side effects from medications that hindered her ability to drive. (Tr. 464.)

Last, Plaintiff asserts that the ALJ failed to fully and fairly develop the record because he did not basis his RFC on an in person assessment by a physician. Assuming this is true, Plaintiff offers no facts or opinions that would have been adduced from further assessment.  Plaintiff simply states that greater limitations may have been documented without any specificity.

In conclusion, Plaintiff offers no facts or evidence that would have been adduced and could have altered the result of the proceeding had the ALJ further developed the record. All of

Plaintiff's arguments of prejudice are premised on mere speculation. *See Hyde*, 2008 U.S. App.

LEXIS 10228 *11.

III. **Whether the ALJ failed to include all of the limitations from the opinion in his RFC.**

Finally, Plaintiff argues that the ALJ failed to include all the limitations listed in the

Boggs report in his Residual Functional Capacity (RFC), and failed to address inconsistences

between his RFC and the Boggs assessment.

"The determination of a claimant's limitations ultimately resides with the commissioner."

*Nowell v. Comm'r of SSA*, 2011 U.S. Dist. LEXIS 33925 (S.D. Miss. Jan. 31, 2011). Errors

committed by the ALJ "warrant reversal and remand only if the plaintiff affirmatively

demonstrates prejudice or harm." *Holmes v. Astrue*, 2012 U.S. Dist. LEXIS 30142, *14 (S.D.

Miss. Feb. 10, 2012); *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). A plaintiff

demonstrates prejudice by showing that additional evidence could have been adduced that

"might have led to a different decision." *Id.* (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.

2000)). If there is no "realistic possibility" that the outcome would have been different without

the error, then the error is harmless. *January v. Astrue*, 400 F. App'x 929, 932 (5th Cir. 2010).

The ALJ reasonably accounted for the limitations excluded from the RFC – poor ability

to interact with supervisors, deal with work stresses, and function independently. The RFC

limited the Plaintiff to simple job instructions, with only occasional and casual interactions with

coworkers and the public. Furthermore, the ALJ did not rely solely on Dr. Boggs's assessment;

rather he relied on the objective medical evidence and the record as a whole. Therefore, even if

the AJL erred by not specifically mentioning the limitations referenced above, the error was

harmless.

## CONCLUSION

For the reasons stated above, the court finds that the Commissioner's decision is supported by substantial evidence and utilizes correct legal standards. Accordingly, the court grants the Commissioner's Motion to Affirm and denies Plaintiff's Motion for Judgment on the Pleadings.

SO ORDERED AND ADJUDGED THIS the 11th day of July, 2012.


s/ Keith Starrett
UNITED STATES DISTRICT JUDGE